## LEE COUNTY et al. vs. LACKIE.

1. **PAUPERS:** *Duty of the County Court and officials in regard to.*
   Sheriffs, Coroners, Constables and Justices of the Peace are, by law, charged with the duty of ascertaining who are in needy and suffering circumstances, and reporting their condition to the County Court, and it is the duty of the court to inquire into the condition of such persons, whether brought to its notice by such officers or otherwise, and determine whether r not they are paupers.

Lee County et al. vs. Lackie.

2. ————: *When the County becomes liable for the support of paupers.*
In order to charge the county with the support and maintenance of destitute persons, they must first be adjudged paupers by the County Court.

APPEAL from *Lee* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Rose*, for appellants.

Mere poverty does not make a pauper. `Brem* v. *Ark. Co.,* 9 Ark., 243.

See Gantt's Dig., secs. 669, 676, and for definition of pauper. Bouvier L. D.

WALKER, J.:

Lackie, a practicing physician of Lee county, presented a bill for medical services rendered to a young man, a resident of the county, who was in indigent circumstances, without means to pay his doctor's bill. The sum claimed for such services was $90. The claim was presented to the County Court of Lee county, to be allowed as a county charge. After having heard the evidence, the County Court allowed $50 as a charge against the county, and Lackie appealed to the Circuit Court. The case was tried in the Circuit Court, by the judge, sitting as a jury, by consent of parties.

The evidence set forth in the bill of exceptions presents the following state of case :

That Alexander Brasher, a resident of Lee county, about twenty-one years of age, who, until taken sick, was a strong able bodied young man, who hired as a laborer, and in February, 1875, was hired by, and living with, a resident citizen of the county, was taken sick there, and required medical attendance, for which he was unable to pay, that he was visited, and attended upon whilst sick, by Doctor Lackie, a regular practising physician ; that the services were rendered and the charges reasonable ; that it was not claimed that Brasher was a pauper, or that Doctor Lackie attended him as such ; that Brasher was never reported

by any officer, whose duty it was to make report to the County Court; that no charge was made against the county at the time the services were rendered; that Brasher was getting well.

Such is substantially the evidence.

The court was asked, in view of the state of facts, to make the following declarations of law applicable to the case:

*First*—A person who is ordinarily strong and able bodied, though he may fall sick, and have no means with which to procure medical aid, cannot be called, under our statute, a pauper, and an allowance made by the County Court to a physician for medical aid rendered to such person is contrary to law.

*Second*—An allowance cannot be made by the County Court for the benefit of poor persons, until such persons have been presented by the officer, whose duty it is to report poor persons to the county, and declared by such court to be paupers.

*Third*—A pauper is one who is destitute of means, and physically unable to labor for a living, and this destitution and physical disability must be grave and of long standing, or so continued as to make the subject necessarily, from humanity, a charge upon the county.

The first two declarations of law were refused, and the third, qualified by adding the law to be: "That it is the duty of each county to provide for the paupers therein, such as the sick who are unable to support themselves, and have no sufficient estate of their own."

And the court, upon the state of case made by the evidence found, that Brasher was a pauper; that Lackie, as physician, rendered the services, and that they were worth $90, which the county of Lee was bound to pay.

Judgment was rendered against the county, a new trial asked and overruled, exceptions taken and the case brought before us by appeal.

The question of law presented is: Was Brasher a pauper, or poor person, for whose medical attendance the county should be charged?

The statute, Gantt's Digest, section 673, provides that " every county in this State should relieve, maintain and support its own poor, such as the lame, the blind, the sick, and other persons who, from age and infirmity, are unable to support themselves, who have no sufficient estate of their own, and who have not removed from another county for the purpose of imposing the charge of keeping them on any county other than the one in which they last lived."

Section 669 provides for the establishment of a poor house, in which the poor and indigent are to be kept.

Section 671 provides for the appropriation of means for building a poor house.

Section 672 provides for letting out the building to some suitable person, whose duty it is to take charge of the poor, to furnish clothing and medical attendance.

Section 674 makes it the duty of sheriffs, constables, coroners and justices of the peace, to give information of such persons as they may ascertain to be paupers, and the court, if satisfied that they come within the character of persons contemplated by the act, shall, from time to time, provide for such poor persons at the expense of the county, and for that purpose may draw orders on the treasury of the county ; and, finally,

Section 676 provides that " all paupers reported to the County Court under the provisions of the preceding sections shall, upon the court being satisfied that they are paupers, be, by order of court, delivered over to the keeper of the poor house by the sheriff of the county, to remain there under the care of the keeper until discharged by order of the court."

The question of making provision for the care and support of the poor in every community, particularly in cities, and all

densely populated countries, is becoming of increased importance. Appeals are frequently made for assistance to the individual public, and is more or less responded to according to the ability and charitable disposition of those to whom it is made.

In order to provide some general means for giving protection to that class of poor persons termed paupers, our Legislature has imposed the duty of providing a home for such upon the County Courts of each county, whose duty it is made to determine who are, or are not, proper objects of care and expense. Sheriffs, coroners, constables and justices of the peace who reside in, or are required in the discharge of their official duties to pass frequently over every part of the county, are charged with the duty of ascertaining who are in destitute and suffering condition, and to report them to the County Court, whose duty it is made to examine into the circumstances and condition of persons so reported, or brought otherwise to their notice, and to determine whether they are or not paupers.

In a general sense, all poor persons may be said to be paupers, but not in the statute meaning of the term. A pauper is defined to be a poor person, particularly one so indigent as to depend upon the parish or town for support. Whether the poor person is so indigent, so infirm, sick or disabled as to become an object of public care and support must be first passed upon by some competent tribunal.

As a general proposition, the court was certainly correct in declaring the law to be, "that it is the duty of each county to provide for the paupers therein." But the court, by refusing to declare that it was necessary for the County Court to pass upon or determine the condition of those persons who were to become a charge upon the county for support, in effect assumed that all poor persons, whether ascertained by the County Court to be paupers or not, should, when supported or cared for at individual

expense, became a public charge upon the community, to the extent of paying for the care, protection and support thus given.

We are sensible of the difficulty that must arise upon emergencies, and before time and opportunity can be afforded for the court to act, and that some who deserve protection and care may, for a time, be left to suffer, or left to the charitable in the vicinity where they may be found.

But unless this question of support and care is determined by some tribunal, and is not left open to be determined by the person called upon to give support or relief, it is evident that a greatly increased and unnecessary charge may be made upon the county, in which such poor person resides.

The law seems to have made provision, not only for the protection and care of the paupers of the county, but has provided a tribunal to ascertain who are the proper subjects of public charge. It has, moreover, charged a class of its officers with the duty of giving information of all such known to them. This duty may be hastened by individuals calling the attention of these officers to such as may have escaped their observation; or any citizen may bring the facts to the knowledge of the County Court, whose duty it is to pass upon the condition and circumstances of the subject presented for its consideration, and if found to be a proper subject of charge upon the county to make the necessary order for that purpose.

Looking at the evils which may result in individual cases from delay on the one hand, and the increased burdens which may be imposed upon the county on the other, by extending the right of charge for care and support, to all who are supposed to be poor and in need, without the object of such care being first adjudged by the court a pauper, and a fit subject for public charge, we think it safest and most conducive to the public good, and in accordance with the spirit and intent of the legislature, to hold

that in order to charge the county with the expenses of the care and support of paupers, they should first be declared such by the County Court. Such was our decision in the case of *Bren* v. *Arkansas County,* 9 Ark., 240.

Private individuals, as well as physicians, may upon emergencies be called upon to give temporary relief to sufferers from sickness or other cause, before the court can be called to act upon the case.

Perhaps physicians, more than any other class of citizens, are the largest contributors of relief. The pages of their account books, if examined, would no doubt disclose a very large sum charged for professional services, to those who were not at the time' the services were rendered able to pay, and which, if charged to the county, would impose an enormous tax.

In the case before us, it appears, that a young, active laborer was taken sick in the county of his residence. Medical aid was necessary, and was bestowed upon him; that the charge was a reasonable one. The young man had not been, and perhaps upon an appeal to the County Court would not have been, declared a pauper. The services of the physician were not rendered at the instance of the county or any one in charge of the paupers of the county.

Under this state of case the court should have ruled that Brasher was not a pauper, and that services rendered to him while sick was not a charge upon the county.

We think the court erred in its rulings of the law applicable to the case, and for this error the judgment and decision of the court below must be reversed and set aside, and a new trial granted.