COMMONWEALTH *vs.* LOUIS POULIOT.

Hampden.    September 19, 1935. — October 29, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Husband and Wife.    Parent and Child.    Constitutional Law,* Involuntary servitude.    *Needy Person.*

A man without employment or income but able to work could be found guilty of nonsupport of his wife and children if he refused to work for his city without receiving definite compensation for his work, as required by the welfare department of the city as a condition of furnishing him aid; and such finding of guilty was not such compulsion to work as to be slavery or involuntary servitude within the meaning of the Thirteenth Amendment to the Constitution of the United States.

A man's refusal to work for welfare aid from his city, and his consequent nonsupport of his wife and children, were not excused on the ground that, if injured while working, he might not be able to recover against the city nor be entitled to workmen's compensation.

COMPLAINT, received and sworn to in the District Court of Holyoke on June 12, 1933.

On appeal to the Superior Court and waiver of jury trial by the defendant, the complaint was heard by *Brown*, J., who found the defendant guilty and reported the case for determination by this court.

*J. R. Nolen*, for the defendant, submitted a brief.

No argument nor brief for the Commonwealth.

RUGG, C.J. This complaint charges that the defendant at the city of Holyoke on June 12, 1933, and during the preceding three months did unreasonably neglect to provide for the support and maintenance of his wife and six minor children. The defendant waived right to trial by jury. The case was heard before the trial judge upon these agreed facts: The defendant has the physical ability to perform manual labor. He has been unable to find employment and has no income except as aid has been furnished him and his family through the welfare department of the city of Holyoke. The welfare department makes it a condition precedent to furnishing aid to the defendant that he report to and work for the city under the direction of the public works department, but does not contract to furnish such aid merely for work done; it refuses such aid unless other conditions are met by the defendant and in no way agrees to pay the defendant any certain amount of money or to furnish him any definite amount of goods for specified work performed. The city has not contracted and will not contract with the defendant to pay any certain amount or kind of compensation for work done or to be done by him. The public works department keeps a record of the number of hours worked by the defendant and of the number of times the defendant reports or fails to report to the city for work. At present there is no authorized rate with which to credit the number of hours worked by the defendant or any other welfare worker. The defendant refuses to work for the city unless he shall receive a definite and certain compensation for his services. The trial judge found the defendant guilty and imposed sentence, which was stayed pending report to this court at the request of the Commonwealth and the defendant. G. L. (Ter. Ed.) c. 278, § 30.

The complaint in the case at bar follows in substance the

words of G. L. (Ter. Ed.) c. 273, § 1, whereby any husband or father who unreasonably neglects to provide for the support and maintenance of his wife and minor children is made liable to punishment by fine or imprisonment or both. The validity of the statute is not and could not be successfully assailed. *Commonwealth* v. *Booth*, 266 Mass. 80.

The defendant contends that a finding of guilty compels him to work in violation of the Thirteenth Amendment to the Constitution of the United States. That Amendment provides that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." It was said in *Butler* v. *Perry*, 240 U. S. 328, 332–333: "Utilizing the language of the Ordinance of 1787, the Thirteenth Amendment declares that neither slavery nor involuntary servitude shall exist. This amendment was adopted with reference to conditions existing since the foundation of our Government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results. It introduced no novel doctrine with respect of services always treated as exceptional, and certainly was not intended to interdict enforcement of those duties which individuals owe to the State, such as services in the army, militia, on the jury, etc. The great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers. *Slaughter House Cases*, 16 Wall. 36, 69, 71–72; *Plessy* v. *Ferguson*, 163 U. S. 537, 542; *Robertson* v. *Baldwin*, 165 U. S. 275, 282; *Clyatt* v. *United States*, 197 U. S. 207; *Bailey* v. *Alabama*, 219 U. S. 219." Cooley, Const. Lim. (8th ed.) 607, note 4. Story, Const. (5th ed.) §§ 1915–1927.

Manifestly, it is not slavery or involuntary servitude, as thus authoritatively defined, to sentence this defendant if he fails to perform his duty to support his family. The obligation of a husband and father to maintain his family, if in any way able to do so, is one of the primary responsi-

bilities established by human nature and by civilized society. The statute enforces this duty by appropriate sanctions. A reasonable opportunity is afforded to the defendant by the city to provide for the support of his wife and children. The statutes require that support at the public expense be provided for the poor and indigent residing or found in the several towns. G. L. (Ter. Ed.) c. 117, §§ 1, 2, 14, 17, 18. In a period of depression like the present, it is reasonable to require one in the position of the defendant to work under the conditions shown in the case at bar in order to meet his obligation to his family. If occasion arises, the officers of the city can be compelled to perform their functions with respect to the defendant in a lawful way and without oppression.

It is not necessary to inquire whether the defendant, in working for the city in accordance with the terms set forth in the agreed facts, would enjoy the benefit of the workmen's compensation act, or would have no redress against the city for injuries received in the course of his labor. See *Curran* v. *Boston*, 151 Mass. 505; *Pettingell* v. *Chelsea*, 161 Mass. 368. If it be assumed that none of these rights would be open to him, that does not affect his natural and legal obligation to do all that he reasonably can for the support of his wife and children.

It is plain that there is nothing in G. L. (Ter. Ed.) c. 117, §§ 20, 21, 22, which relieves the defendant. These sections relate to infirmaries and to those who seek for and receive food or lodging on premises provided by the town; they do not relate to a person in the position of the defendant as shown by the agreed facts; nor do they purport to cover the field disclosed by the agreed facts.

In accordance with the terms of the report, the finding of guilty is to stand.

*So ordered.*